```
     D67PFILC
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   FILOMENO NUNEZ, ET AL.,

4                  Plaintiffs,

5            v.                                13 CV 426 (DLC)

6   BISTRO NEW YORK DEVELOPMENT,
    INC., (d/b/a BISTRO NEW YORK),
7   and JONG K. MOON

8                  Defendants.

9   ------------------------------x
                                              New York, N.Y.
10                                            June 7, 2013
                                              4:32 p.m.
11
    Before:
12
                        HON. DENISE COTE,
13
                                              District Judge
14
                           APPEARANCES
15
    MICHAEL FAILLACE & ASSOCIATES, P.C.
16       Attorneys for Plaintiffs
    BY:  MICHAEL FAILLACE
17       LINA FRANCO

18  MATTHEW L. LEVINE, PLLC
         Attorney for Defendants Bistro 369 Food Court; Leon Moore;
19  George Jamieson
    BY:  MATTHEW L. LEVINE
20

21

22

23

24

25

1             (In open court)

2             (Case called)

3             MR. FAILLACE:  Good afternoon, your Honor.  I'm
4    Michael Faillace from Michael Faillace and Associates, and here
5    with me is my associate, Lina Franco.

6             MR. LEVINE:  Good afternoon, your Honor.  Matthew
7    Levine for the defendants, Bistro 369 Food Court; Mr. Moore and
8    Mr. Jamieson.

9             THE COURT:  Thank you.

10             MR. LEVINE:  May I also inform the Court that counsel
11    for Mr. Gutierrez is in the court, in the gallery.

12             THE COURT:  And could you identify yourself for the
13    record?

14             MS. SAYLOR:  Elizabeth Saylor from Emery, Celli,
15    Brinckerhoff and Abady for Mr. Gutierrez.

16             THE COURT:  And if you want to come up, counsel, and
17    take a seat, I'd appreciate it.

18             This is an order to show cause in an FLSA action, and
19    I issued an order to show cause earlier this week after I was
20    presented with a stipulation and proposed order with respect to
21    a named plaintiff, Eduardo Gutierrez.  In that proposed
22    stipulation and order, which I signed on June 3rd, I was
23    informed that Mr. Gutierrez had never agreed to participate in
24    this action as a plaintiff and had never signed a retainer
25    agreement with Mr. Faillace's law firm.

1           It indicated further that he did not wish to be a
2   plaintiff in this action, and that his name should be removed
3   from the action.  It indicated further that the Faillace firm
4   relinquished all claims to attorney's fees with respect to this
5   plaintiff.  I was advised, through this stipulation, that
6   Mr. Gutierrez is separately represented by the law firm Emery,
7   Celli, and I appreciate that they're present here in this
8   courthouse.
9           I signed the stipulation, but also that same day,
10  June 3rd, perhaps the next day, June 4th, issued this order to
11  show cause asking why plaintiff's counsel should not be
12  sanctioned.  One, a plaintiff was listed in the caption here
13  who had not authorized the law firm to sue on his behalf.
14          Two, in a conference I held in this action, counsel
15  for the defendants raised the issue of whether plaintiff's law
16  firm actually did represent each of the plaintiffs it purported
17  to be suing on behalf of.  And during that conference,
18  Miss Franco represented to me that she had personally
19  interviewed each of the plaintiffs and obtained from each of
20  them a retainer agreement and that plaintiff's counsel had
21  retainer agreements for each of them.
22          In my order of June 4th, I recited various grounds on
23  which plaintiff's counsel could be sanctioned, including Rule
24  11, Rule 16 and, of course, this court's inherent powers to
25  issue sanctions.  I ordered this conference today so that

1  plaintiff's counsel could have an opportunity to respond, and I
2  ordered plaintiff's counsel to give notice to Mr. Gutierrez and
3  his attorney, which has clearly been done.  I believe we
4  separately made an effort to notify Mr. Gutierrez's counsel.
5          So Mr. Faillace?
6          MR. FAILLACE:  Your Honor, this, as you've discussed,
7  your Honor, is a very unfortunate situation.  Mr. Gutierrez
8  came to our office on January 7th.  He interviewed with
9  Ms. Lina Franco, who had just started working in my office.  He
10 was not the only one there.  He came with other individuals.
11         Now, the procedure we follow in my office is the
12 clients come, they interview with us, and then they sign the
13 retainer agreement right in the next office next door to where
14 they're being interviewed.  The confusion that Ms. Franco had
15 is that she has the interview, she interviewed him.  We have a
16 record of that interview, and because she was new, she thought
17 that the retainers were being done as she had seen them being
18 done, right away right that day.
19         What she didn't know was that our office manager, who
20 immediately takes care of the retainers, right as we finish the
21 interviews, had left to go to the dentist that day, and we have
22 that in our record.  We can show, your Honor, that Mr. Pedro
23 Polanco had left that day to go to the dentist.  Due to that
24 confusion, she thought he had signed it, and like everybody
25 else who came, signed right after the interview.

1     Unfortunately, he didn't sign and then never came back
2  to sign.  So, you know, then she wrote the complaint assuming
3  he had signed, didn't know he hadn't signed, and then when
4  she -- when she came here, she had the vision that he signed
5  the agreement.  Now, your Honor, we recognize it was a mistake
6  and we apologize.  Miss Franco was new in this.  She just
7  started working for us.  She had never practiced before; so it
8  was right at the beginning of her learning curve and, you know,
9  she's very concerned and, you know, feels very bad about it.
10     She immediately agreed with Mr. Levine, when he
11  complained.  We have e-mails here to prove it, that we
12  immediately removed Mr. Gutierrez from our chart.  We agreed to
13  remove him from the case and so, you know, we never fought that
14  in any way.  So, you know, there hasn't been any harm to
15  anybody in this.  Just an unfortunate situation, your Honor.
16     And, you know, to a certain extent, you know, I take
17  some responsibility because I wanted Ms. Franco to learn, and
18  that's why I was giving her the responsibility that usually I
19  had, of interviewing people and making sure they did the --
20  they signed the retainers, because usually that's what I do.
21  But I wanted her to get into the business and learn and meet
22  the clients and, you know, just learn what we do, and so I gave
23  her that day that responsibility.
24     So basically, your Honor, I mean, we have to accept
25  that, you know, we made a mistake.  It's an unfortunate

1   mistake, but in no way did we -- and, you know, and Miss Franco
2   was convinced the gentleman had signed, but she was very
3   willing to take him off.  And, you know, we have -- you know,
4   that's why we signed that stipulation because we in no way
5   wanted to have any problem.
6              One thing I wanted to raise, your Honor, was that
7   after many of my clients had signed their retainers, I got a
8   call from the owner of the business, who told me they
9   weren't -- you know, the clients didn't want to be in the case,
10  and that he had talked to them.  And I spoke to one of them,
11  and his name is Alejandro, and he said, don't pay attention,
12  we're just telling -- you know, we're just letting him -- you
13  know, saying yes to him for him to leave us alone and let us
14  work.  The owner was pressuring my clients to get out of the
15  case, and one of them was --
16             THE COURT:  Mr. Faillace?
17             MR. FAILLACE:  Yes.
18             THE COURT:  Mr. Faillace, that's not the purpose of
19  today's conference.
20             MR. FAILLACE:  Okay.  Your Honor, I was just
21  explaining why there was some confusion.  The clients told us
22  on the phone they wanted to stay in the case.
23             THE COURT:  Are you telling me that Mr. Gutierrez told
24  you on the phone that he wanted to stay in the case?
25             MR. FAILLACE:  Mr. Sanchez told me, don't worry,

1   Mr. Faillace, we're just following him along.  We're just --
2   you know, we're just saying yes, yes to everything he says for
3   him to leave us alone.  That's what he said to me, and I can
4   bring Mr. Sanchez here, and he will testify to that.
5           He told me on the phone because Mr -- I forget his
6   name, Lynn somebody, was calling me and telling me, Oh, your
7   clients don't want to be in the case.  I said, Put my clients
8   on the phone, please.  And so he put Mr. Sanchez on the phone,
9   and he said, don't pay attention.  We're just following the
10  line.  We're just saying yes to him.
11          THE COURT:  Well, Mr. Faillace, I wanted to stay on
12  the topic here, which is your law firm's listing of
13  Mr. Gutierrez as a plaintiff when you should not have, your law
14  firm's representation to this Court that you had a retainer
15  agreement for him or from him when you did not have that.
16          Let me ask you, Ms. Franco.
17          MS. SAYLOR:  Yes, your Honor.
18          THE COURT:  You made your representation to me on
19  April 19th that you had a retainer agreement for all the
20  plaintiffs.  When did you learn that you did not have a
21  retainer agreement from Mr. Gutierrez?
22          MS. SAYLOR:  I learned on April 11th, after I received
23  counsel's e-mail -- counsel's letter on April 11th letting us
24  know to keep -- to preserve engagement agreements.  So I asked
25  our paralegal for such agreements, and I realized we didn't

1   have an agreement from Mr. Gutierrez.  And I said, Why?  Did we
2   have something saying that he was not in the case?  I can't
3   remember what our paralegal said, but I immediately -- I have
4   an e-mail here from -- dated April 11th also, right after I
5   received correspondence from Mr. Levine, saying we have removed
6   Eduardo Gutierrez from our charges.
7           And this is before our meeting with your Honor on
8   April 19th; so this was a week before.  And to be completely
9   honest, your Honor, I thought it was a moot issue.  I had
10  already told Mr. Levine that Mr. Gutierrez wasn't in the case.
11  I have all the e-mails proving that.  As a matter of fact, your
12  Honor, I sent numerous e-mails.  I sent another one April --
13  numerous e-mails telling him Mr. Gutierrez is not in the case,
14  Mr. Gutierrez is not in the case, because I couldn't find a
15  retainer.  And I wanted an affidavit from Mr. Gutierrez saying
16  he's not in the case and we couldn't get ahold of
17  Mr. Gutierrez.  So yes, your Honor --
18           THE COURT:  So --
19           MS. SAYLOR:  Yes, your Honor.
20           THE COURT:  Ms. Franco, I have a problem with your
21  chronology here.  The conference with me was, I believe,
22  April 19.
23           MS. SAYLOR:  That's correct, your Honor, and for
24  that --
25           THE COURT:  So it was after you learned you didn't

1   have a retainer agreement for Mr. Gutierrez and, yet, you
2   represented to me that you had personally met with all of the
3   plaintiffs, including Gutierrez, and you had a retainer for all
4   of them.
5           MS. SAYLOR:  Well, your Honor, I thought we had
6   retainers for all of them, and I thought we were talking about
7   the people that I had -- you know, I thought I had already
8   discussed this issue with defendant's counsel.  I thought that
9   we had already said that we were going to remove Eduardo
10  Gutierrez.  So when I represented to you that we had retainers,
11  my understanding was it was the retainers of everybody else.
12  As Michael Faillace said, I was new, you know.  I assumed.  I
13  misspoke.
14          THE COURT:  Now, Mr. Faillace, is this the only case,
15  let us say, in the last six months filed in a court, state or
16  federal, in which this kind of issue has been raised?
17          MR. FAILLACE:  Without any doubt, yes, your Honor,
18  yes.
19          THE COURT:  Mr. Faillace, pause before you answer
20  that.
21          MR. FAILLACE:  I can't recall any case where this has
22  happened to me, your Honor.
23          THE COURT:  Mr. Levine?
24          MR. LEVINE:  Yes, your Honor.  I would like to add a
25  couple of facts to this record because I think they're

1    important for you to consider.  The first one is a small one,

2    but I think it relates to the second one.  The first one

3    relates to this hearing this afternoon.  Despite your Honor's

4    clear order that they notify Mr. Gutierrez's counsel about it,

5    they did not notify them until an hour and a half before the

6    hearing.  I have the e-mail to prove it.  Small thing, maybe,

7    maybe not because of the second thing I'm going to tell you.

8            After our conference, your Honor, at Miss Franco's

9    invitation, I sought the retainer letter for all of the

10   plaintiffs she had assured your Honor.  I remember as well,

11   that she had one for Mr. Gutierrez specifically.  She also had

12   written that to me in an e-mail on April 11th.  I pressed them

13   for it.  They said yes, yes, we'll get it for you.  They

14   delayed it.

15           On May 10th, the following happened.  Pedro Pilanco,

16   in Mr. Faillace's firm, called Mr. Gutierrez on his cell phone

17   and said the following, this is the conversation: "You signed a

18   paper on January 7th, didn't you?"  Mr. Gutierrez responded to

19   him, "No, I didn't.  You know that."  He said to Mr. Gutierrez,

20   Mr. Pilanco, "Well, do you want to be in this lawsuit?  Because

21   if you don't, you're going to have to pay the fees and you're

22   going to be in big trouble."  Mr. Pilanco did not tell the

23   amount of fees.  Mr. Gutierrez said, "Well, I'm going to have

24   to consult an attorney about this."  Mr. Pilanco responded,

25   "Well, it's up to you whether you decide to proceed with this

1   lawsuit, but if you don't," again he said, "you're going to be
2   in big trouble and you're going to owe a lot of money for the
3   fees incurred up to this point."
4              Your Honor may want to ask Ms. Saylor about that,
5   whether she can confirm that.  I can give you a declaration
6   from my legal assistant, who was on the phone with
7   Mr. Gutierrez shortly after this call with Mr. Pilanco
8   occurred.  And I have also a photograph of a call from
9   Mr. Pilanco's phone number, which is the same exchange as
10  Mr. Faillace's.
11             So I think Mr. Faillace's statement to you that they
12  never did anything after April 11th is completely wrong, it's
13  inaccurate, it's misleading.  In fact, they tried to get him to
14  come and sign something to get him into the lawsuit because
15  they knew several days later Ms. Franco was going to give you
16  the retainer letters.  And, indeed, she did several days later.
17  All of them had been signed except that she had nothing from
18  Mr. Gutierrez.
19             So, your Honor, I think you need to know those facts
20  as you go forward in your decision.
21             THE COURT:  I'm sorry, I didn't take down the name of
22  the attorney from Emery Celli, counsel's name.
23             MS. SAYLOR:  Elizabeth Saylor, S-a-y-l-o-r.
24             THE COURT:  Ms. Saylor, is there anything that you
25  want to add?

1          MS. SAYLOR:  I can confirm that Mr. Gutierrez

2     consulted with us because he had received a call from the

3     plaintiffs' law firm telling him that if he did not participate

4     in the lawsuit, that he would be responsible for fees and would

5     be in big trouble.  And that was his concern, so he came to us

6     to consult regarding what his legal rights were there.

7          And he did say that he had never signed a retainer.

8     His memory, as he told me, was that he had spoken to them on

9     the phone but that he had not agreed to participate in the

10    case.

11         THE COURT:  Thank you, Miss Saylor.

12         MR. LEVINE:  Your Honor, I'm sorry.  I had one thing I

13    forgot to tell you.  I apologize.  May I?

14         THE COURT:  Yes.

15         MR. LEVINE:  Mr. Faillace, apparently, also spoke to

16    Mr. Gutierrez.  The call he was referencing after my client

17    first got served because my client put Mr. Gutierrez on the

18    phone, and Mr. Gutierrez, according to an affidavit he signed

19    before I was in this case, told Mr. Faillace that he never

20    agreed to be part of this lawsuit; that when Mr. Faillace

21    insisted he work for a company different than my client's

22    company, Mr. Gutierrez told him, no, I don't work for that

23    company.  And Mr. Gutierrez said, I'm surprised to learn my

24    name is included in the caption of the case, Bistro New York

25    Development versus Jong Moon, which is also in this caption in

1   this court.  I apologize for not describing that before.
2           THE COURT:  And, Mr. Levine, when did that
3   conversation occur?
4           MR. LEVINE:  The conversation occurred, I believe,
5   sometime in mid-February, I believe February 14th appears to be
6   the date, of 2013.
7           THE COURT:  Mr. Faillace?
8           MR. FAILLACE:  Your Honor, I again repeat.  I recall
9   that conversation, and Mr. Gutierrez may be saying what he
10  saying now, but in that conversation he and Mr. Sanchez assured
11  me, don't pay attention, just -- you know, we're in the case.
12  You know, don't worry about it.  We're just, you know,
13  following him along so that he let's us do our work.
14          If Mr. Gutierrez wants to change his story now, you
15  know, I'm left -- I can't, you know, say anything.  But I do
16  recall having had that conversation because it was Mr. Lynn who
17  put him on the phone because he was talking to me saying, oh,
18  these guys don't want to be in the case.  Well, put them on the
19  phone.  Let them tell me that.
20          And Mr. Gutierrez and the other gentleman said, don't
21  worry about it, we're just following him along.  You know,
22  we're just saying yes to him.  So I stand behind my story, your
23  Honor, because I do recall that occasion and both gentlemen
24  told me don't worry, don't worry, don't worry
25          MS. FRANCO:  Your Honor, may --

1          THE COURT:  Now, Mr. Faillace, you told me just
2    moments ago about a conversation you had with someone other
3    than Mr. Gutierrez.  You didn't mention that Mr. Gutierrez was
4    on the phone at that time.
5          MR. FAILLACE:  Okay.  Your Honor.  I remembered the
6    name Alejandro Sanchez.  I remember having spoken to the people
7    who still work in the place, and I remembered because Alejandro
8    has come back to me and said, we told you that.
9          Now, Mr. Gutierrez now changes the story, but I do
10   recall having had those conversations that day, and had
11   Mr. Gutierrez told me I don't want to be in the case, I would
12   have done something right away, but that's not what he told me,
13   your Honor.  I have total memory about it, your Honor.  They
14   did not tell me we don't want to be on the case.  The clients,
15   on the phone, said, you know, just don't pay attention.
16         THE COURT:  So why didn't you promptly notify
17   Ms. Saylor of today's conference?
18         MR. FAILLACE:  Your Honor, that I have to take
19   responsibility for my office.  I thought my office had taken
20   care of that.  You know, I sincerely thought it was being taken
21   care of and I -- you know, I did not know it hadn't been done.
22         THE COURT:  When did you give instructions for that to
23   happen?
24         MR. FAILLACE:  I didn't because my office receives the
25   ECF; so they have the responsibility of doing it right when

1 they get the ECF.

2 THE COURT: So you never gave any instructions?

3 MR. FAILLACE: I mean, your Honor, I can find that --
4 I don't recall giving the instructions because in my office,
5 your Honor, the associates take responsibilities of the cases.
6 They get the ECF, and they take action based on the ECFs. I
7 don't have to give them instructions on everything that
8 happens.

9 MS. FRANCO: Your Honor, if I may? I will take the
10 blame for this. I've been at depositions all week. We are
11 short staffed right now. Josh, our other coworker, the other
12 attorney in the office, thought that I sent it. I didn't send
13 it because I completely forgot. I reminded him of it when I
14 got back to the office after the depositions today, and he sent
15 it immediately.

16 THE COURT: Let me ask you just one more time,
17 Mr. Faillace. In the last six months, has any judge raised
18 with you or your law firm that you have named as plaintiffs or
19 people who have authorized you to sue on their behalf who
20 purportedly joined lawsuits that you filed, have you
21 represented to any court that you were authorized to act on
22 their behalf and that has been challenged by either one of the
23 plaintiffs or by defense counsel?

24 MR. FAILLACE: Honestly, your Honor, not to my
25 recollection. If it happened, it didn't happen to my

1    knowledge.  So I honestly do not recall having had that

2    problem.  I've had different problems with clients not showing

3    up to settlement conferences and we're having to drop the case,

4    because the client didn't show up in a case with Judge Forrest,

5    but that's not because anybody challenged that they were in the

6    in case.

7            And we had another case that a client, after filing

8    the lawsuit, asked us to drop the lawsuit because he had

9    decided on his own that he didn't want the lawsuit.  But I

10   don't recall any case where there has been a challenge because

11   somebody who was in the lawsuit wasn't in the lawsuit or had

12   not signed up.  I don't have any recollection of that.  If

13   there is such a case, I'd love -- you know, I'd be interested

14   to hear which one is it because I'm sure I can clarify that.

15           THE COURT:  So, Mr. Faillace, I don't know if you want

16   to put in anything in writing.  I'm not requiring you to.  I'm

17   going to reserve decision based on this record.  Do you want an

18   opportunity to put in something in writing or no?

19           MR. FAILLACE:  Your Honor, I don't know.  I can't

20   see -- I mean, we -- you know, let's say yes, your Honor.  Can

21   I change my mind?

22           THE COURT:  Absolutely.  Miss Franco, you should feel

23   free, if you want to put in something in writing, you may, as

24   well.  I'll give you two weeks.  That would be June 21st, and

25   if you're not going to submit anything, I would appreciate a

Case 1:13-cv-00426-SN   Document 25   Filed 06/12/13   Page 17 of 18      17
D67PFILC

letter advising me of that so that I know the issue is ripe for me to make a final decision about it.

MS. FRANCO:  Okay.  Your Honor.

THE COURT:  Excuse me, Miss Franco?

MS. FRANCO:  I said okay, your Honor.

Your Honor, one more thing.  It's also interesting to note that Mr. Gutierrez was speaking with other plaintiffs.  He was promoted to assistant manager two weeks after he came to our office.  It's just an interesting fact to note.

THE COURT:  Actually, Miss Franco, I'm not sure you fully comprehend what's happening here, based on that statement.

MS. FRANCO:  Perhaps, your Honor.

THE COURT:  The issue is whether plaintiff's counsel can be relied upon.  You listed someone as a plaintiff in a lawsuit, in the caption of a lawsuit where you were not authorized to do so.  You made a representation to me, in person, when you were specifically questioned about it because defense counsel raised the issue.  You assured me you had a retainer agreement for Mr. Gutierrez.

Based on what you've told me today, at the conference, you knew you did not.  Today you told me that the conference was on April 19th; that on April 11th, you learned you didn't have a retainer agreement for him.  Nonetheless, you advised me on April 19th that you did.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

D67PFILC

1      Now, as an officer of the court, you have a
2 responsibility to make sure any document you file is accurate,
3 to make sure that any oral representation you make to the Court
4 is accurate.  These are serious matters.  Do you understand me,
5 Miss Franco?
6           MS. FRANCO:  Yes, your Honor.
7           THE COURT:  Thank you, everyone, for participating
8 today.
9           (Adjourned)