```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
FILOMENO NUNEZ, JOSE BUSTAMANTE, LUIS   :
ALBERTO MONTERO, RICARDO GARCIA, JESUS  :   13 Civ. 0426 (DLC)
FLORES, EDUARDO GUTIERREZ, ALEJANDRO    :
SANCHEZ and VICTOR SUZREZ, individually :
and on behalf of others similarly       :   OPINION & ORDER
situated,                               :
                Plaintiffs,             :
                                        :
          -v-                           :
                                        :
BISTRO NEW YORK DEVELOPMENT INC.,       :
(d/b/a BISTRO NEW YORK), BISTRO 369     :
FOOD CORP., (d/b/a BISTRO NEW YORK),    :
LEON MOORE, GEORGE JAMIESON and JONG K. :
MOON,                                   :
                Defendants.             :
                                        :
----------------------------------------X
```

For the plaintiffs Filomeno Nunez, et al.:

Michael Faillace
Lina Franco
Michael Faillace & Associates, P.C.
60 East 42nd Street
Suite 2020
New York, NY 10165

For the defendants Bistro New York Development Inc., et al.:

Matthew Levine
Law Offices of Matthew l. Levine, PLLC
565 Fifth Avenue 7th Floor
New York, NY 10017


DENISE COTE, District Judge:

Plaintiffs' counsel in this FLSA action, Michael Faillace & Associates, P.C. ("MFA"), brought suit in the name of a party it did not represent, attempted to negotiate a settlement based upon that representation, and has provided inconsistent descriptions

of how these events came to pass.  On June 4, 2013 the Court ordered MFA and MFA attorneys Michael Faillace ("Faillace") and Lina Franco ("Franco") to show cause why they should not be sanctioned for misconduct.  As more specifically elaborated upon below, the conduct of MFA, Faillace, and Franco fell below the standard of conduct required for officers of the court.  In an exercise of discretion, however, this Court shall not impose sanctions at this time.

BACKGROUND

This action was filed on January 18, 2013.  The complaint named eight plaintiffs, including Eduardo Gutierrez ("Gutierrez").  An amended complaint of February 20 also listed Gutierrez as a plaintiff, as well as the seven others.  Both complaints were signed by Faillace of MFA.  MFA has proffered engagement letters for eight putative plaintiffs dated between December 7 and 11, 2012.[1]  It does not have one from Gutierrez.

On January 7, Franco met with Gutierrez in the MFA offices, but Gutierrez did not sign a retainer agreement with MFA. Thereafter, Franco drafted the FLSA complaint at issue in this case naming Gutierrez as a named plaintiff.

---

[1] The December engagement letters provided to the defendants in April bear the names Alejandro Jimenez (aka Sanchez), Filomeno Nunez, Jesus Flores, Jorge Paredes, Jose Bustamante, Luis Montero, Ricardo Garcia, and Victor Suarez.  The February 20 complaint does not include as a named plaintiff one of those whose names appear on the engagement letters: Paredes.

In February 2013, defendant Leon Moore received a copy of the complaint. Moore took Gutierrez and another of his employees to his counsel's office on February 28. Gutierrez signed an affidavit, which states in part that he never agreed to be part of this lawsuit and was surprised to learn that his name was included in the caption of the case.

On April 2, Matthew Levine ("Levine"), counsel of record for the defendants called Faillace, introduced himself and told Faillace that one or more of the named plaintiffs "appeared not be Plaintiffs at the time he filed the complaints." Faillace assured Levine that he had "engagement letters" for every one of them.

On April 4, Franco sent Levine a damages chart that included a claim for Gutierrez in the amount of over $40,000. The chart included a claim of over $30,000 for Jorge Paredes ("Paredes"). The two claims comprised over 20% of the total demand. Neither Gutierrez nor Paredes had authorized these claims. Gutierrez had not signed a retainer agreement with MFA. And Paredes is a named plaintiff in a different lawsuit that Faillace had filed against an unrelated restaurant. See Jorge Paredes v. Traffic Bar & Rest., Inc., 12 Civ. 8111 (AKH).

In a letter of April 11, Levine informed MFA that it had come to his attention "that one or more persons who are purported to be Plaintiffs in this action may not, in fact, be a Plaintff;

3

or may not have been Plaintiff at the time this action was commenced . . . despite having been named in the caption." The letter demanded that MFA preserve all documents related to the participation of any plaintiff, including any purported withdrawal by Gutierrez.

On that same day, Franco assured Levine in an email that she had retainers for every plaintiff, including Gutierrez. This was not true. Indeed, at a conference with the Court on June 7 she admitted that she had learned on April 11 that MFA had no retainer agreement with Gutierrez.

In her April 11 correspondence, Franco accused the defendants of intimidating the plaintiffs, but added that she was removing Gutierrez from the damages chart. Franco asserts that MFA paralegal Pedro Polanco ("Polanco") told her that day that MFA had retainers "for everyone" but that he had been unable to locate the one for Gutierrez.

April 19 Initial Conference

At the initial pretrial conference held on April 19, Franco appeared on behalf of the plaintiffs. During the conference, defense counsel expressed concern that certain individuals who had not consented to representation by MFA and who did not agree to participate in this action were nonetheless listed as plaintiffs. Franco represented to the Court that she had executed retainer agreements from all named plaintiffs, including

Gutierrez.

Franco has offered different explanations for this statement. At one point she explained that she was relying on Polanco's assurance from April 11 that MFA had retainer agreements "for everyone," and on another occasion she stated that she wasn't referring to Gutierrez because she had already removed him from the damages chart. Franco's representation to the Court on April 19 was inaccurate, and also, at the very least, reckless.

On May 3 and May 9, defense counsel sought copies of the engagement letters from MFA. Franco asked Polanco to scan the retainer agreements and send them to her.

May 10: Polanco's Inappropriate Telephone Call

On May 10, Polanco called Gutierrez. Gutierrez reports that Polanco told him that if he did not participate in this lawsuit that Gutierrez would be responsible to MFA for attorney's fees and would be in "big trouble." Gutierrez reported the telephone call to defendant Leon Moore, who arranged a call between Gutierrez and Levine. Gutierrez described the call from Polanco and asked Levine to represent him. Levine declined to represent Gutierrez, and put him in touch with the law firm Emery Celli Brinckerhoff and Abady, LLP ("Emery Celli") to serve as outside counsel.

Polanco asserts that no one directed him to call Gutierrez.

He denies telling Gutierrez that he would have to pay the law firm fees if he dropped out of the case.  Faillace admits that the Polanco call was "inappropriate."

Franco represents that Polanco told her on May 11 or 12 that he was unable to find the Gutierrez retainer agreement.  On May 13, Franco produced engagement letters to defense counsel.  Although the production did not include one from Gutierrez, Franco did not specifically advise Levine that she had no engagement letter from Gutierrez.  Franco's email of that day inquired whether the defendants would "stipulate to officially dismiss Eduardo Gutierrez from the case?"  In response to another request for the Gutierrez retainer agreement, Franco acknowledged for the first time on May 15 that MFA did not have one and that Gutierrez did not sign one.

May 30 Stipulation

On May 30, Gutierrez's counsel, Faillace, and counsel for the defendants executed a stipulation in which all signatories recognized that Gutierrez's counsel had informed all counsel in this action "that Mr. Gutierrez never agreed to participate in this action and never signed a retainer agreement with Michael Faillace & Associates, P.C."  They stipulated that MFA waived any claim for attorney's fees.

June 7 Conference

On June 4, the Court ordered Faillace and Franco to appear

at a conference to show cause why they should not be sanctioned for listing Gutierrez as a plaintiff and representing at the initial conference that MFA represented Gutierrez.  The June 7 conference was attended by Faillace, Franco, Levine, and Elizabeth Saylor from Emery Celli on behalf of Gutierrez.  Faillace made several representations in response to the order to show cause:

1. Gutierrez came to the office of MFA on January 7 with other individuals and was interviewed by Franco.  Franco, who had never practiced law before and was a new employee, believed that retainer agreements would be executed that day, but they were not because Polanco obtains the agreements from clients and Polanco had left the office early.

2. Faillace immediately agreed to remove Gutierrez from the chart provided to defense counsel.  He represented that MFA never fought "in any way."

Franco also made several representations.  They included:

1. Franco first learned that MFA did not have a retainer agreement from Gutierrez on April 11 when she conducted a search in response to Levine's demand that MFA preserve documents.

2. Franco represented to the Court on April 19 that she had retainer agreements for all the named plaintiffs because she had already told defense counsel that Gutierrez would be removed as a plaintiff.

At the conference, the Court inquired twice of Faillace whether any other judge had raised with him or MFA in the last six months whether he was authorized to name an individual as a plaintiff.  Faillace denied that that had occurred.  That was

incorrect.  The Honorable Katherine Forrest and Colleen McMahon had separately raised with Faillace in March 2013 whether purported plaintiff Miguel Rosas had authorized MFA to bring an action on his behalf against a company called New Restart, Inc., in case 12 Civ. 4449.

At the conclusion of the June 7 conference, the parties were given an opportunity to make written submissions in response to the order to show cause.  On June 21, Faillace submitted a declaration in which he stated, "I now recall one additional action that I did not recall at the hearing on June 7, 2013 where there was a question as to whether a named plaintiff had authorized my firm to file a lawsuit on his behalf."  Faillace also states "I recognize that my firm did not handle Mr. Gutierrez's position in this case as it should have.  I have taken steps to make sure nothing like this happens again at my firm, including instructing my attorneys and staff to double-check before filing any complaints that we have retainer agreements signed by all the plaintiffs."

Levine submitted a declaration in support of sanctions for MFA's purported violation of rules 11 and 16.  He requested as relief "punitive and remedial sanctions" including: "1) attorneys fees incurred in connection with this issue; and 2) discovery into whether other named Plaintiffs properly authorized Faillace and Associates to commence this action."

DISCUSSION

Rule 11(c) of the Federal Rules of Civil Procedure permits a court, acting on its own initiative, to sanction an attorney or law firm if the court determines -- after notice and a reasonable opportunity to respond -- that the attorney, law firm, or party has violated Rule 11(b) by making "false, misleading, improper, or frivolous representations to the court." Williamson v. Recovery Ltd. P'ship, 542 F.3d 43 (2d Cir. 2008). "[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness, and is not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003) (citation omitted).

Rule 16(f) of the Federal Rules of Civil Procedure also permits a court to sanction counsel in connection with a pre-trial conference. One ground for sanction under this rule is when counsel "does not participate in good faith" in the conference. Fed.R.Civ.P. 16(f)(B). See Salahuddin v. Harris, 782 F.2d 1127, 1133 (2d Cir. 1986) ("Rule 16(f) authorizes a judge to impose sanctions"). And a federal court also has inherent powers to "discipline attorneys who appear before it," Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991), which include "the powers to police the conduct of attorneys as officers of the

court and to impose sanctions for attorney misconduct." <u>In re Goldstein</u>, 430 F.3d 106, 110 (2d Cir. 2005) (citation omitted).

Our adversarial system depends for its proper functioning on responsible representations from officers of the court. Negligence in the performance of an attorney's core duty of accuracy in its representations both causes tangible harm to the other parties and undermines the integrity of the judicial process.

Here, MFA's inconsistent statements in this case fell short of the duties owed as officers of the court. Franco's inaccurate representation to the Court on April 19 that she had retainers for all parties is especially concerning considering that she learned that she did not have one for Gutierrez on April 11. And Faillace's failure at the June 7 Show Cause hearing to accurately answer a direct question by the Court as to whether any other judge had raised with him in the previous six months whether he was authorized to name an individual as a plaintiff is also of concern. Faillace did disclose the March 2013 accusations in litigation before Judges Forrest and McMahon in writing later, but the proposition that he did not recall those quite recent similar accusations on June 7 strains credibility.

MFA's conduct also threatened unjustified tangible harm to the defendants and to Gutierrez. In placing on the damages chart two purported plaintiffs whom MFA did not represent in this

action -- Gutierrez and Paredes -- MFA threatened $70,000 in unjustified damages from the defendants.  And in failing to promptly respond to the defendants' inquiries into whether Gutierrez and Paredes were properly made part of the complaint MFA exacerbated this threat of harm.  Moreover, MFA's inadequate supervision of Polanco allowed him to make an inappropriate telephone call to Gutierrez, which frightened Gutierrez to the extent that he sought outside counsel.  In the future, MFA should put in place policies to ensure that its representations to opposing counsel are accurate and that its attorneys and other employees are properly supervised.

While "[s]anctions . . . are appropriate . . . where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court," <u>Wilder v. GL Bus Lines</u>, 258 F.3d 126, 130 (2d Cir. 2001), the Court here exercises its discretion to not impose them.  In the event that the defendants bring a motion for sanctions in this litigation premised on other alleged misconduct by plaintiffs' counsel, the conduct outlined here may be considered in determining whether sanctions should be imposed at that time.

SO ORDERED:

Dated:    New York, New York
          October 3, 2013

                                    _____
                                           DENISE COTE
                                    United States District Judge